540

(R.D. 11597)

MYERSON TOOTH CORPORATION *v.* UNITED STATES

Entry No. A2255.

(Decided November 27, 1968)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Glenn E. Harris* and *Bernard J. Babb,* trial attorneys), for the defendant.

DONLON, Judge:   Plastic artificial teeth, imported in 1963 at Boston from Trinidad, were appraised on the basis of constructed value. Plaintiff claims that there is an export value for the merchandise, and that the invoice prices are the export value. While plaintiff's statement, filed pursuant to Rule 15, made certain alternative claims to appraisement on the basis not only of export value, but also of United States value or constructed value, counsel for plaintiff in open court limited its case to the issue of export value.

Plaintiff further limited its case to six of the several items of merchandise included in the appraisement, abandoning the appeal as to all merchandise save only that identified on the invoice as Dura Blend Anteriors, Dura Blend Characterized Anteriors, Dura Blend Synchronized Posteriors, Dura Blend FLX Posteriors, Dura Blend Shear Kusp Posteriors and Myerson & Sears Dura Blend Posteriors.

Counsel have stipulated that the merchandise at bar is not included among the items enumerated in the so-called Final List of the Secretary of the Treasury, issued under the Customs Simplification Act of 1956 (T.D. 54521).

On an offer by defendant, the parties also stipulated that the exporter of the merchandise at bar, Myerson Tooth Company, Ltd., of Port-of-Spain, Trinidad, is plaintiff's wholly owned subsidiary and that the merchandise at bar is solely exported "from Trinidad to the importer". (R.10.) It is conceded that plaintiff, the importer, is what is known as a selected purchaser, as recited in amended section 402(f)(1)(B) of the Tariff Act of 1930.

The relevant tariff provisions are as follows:

Sec. 402(b): Export value. For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Sec. 402(d): Constructed value. For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Sec. 402(f): Definitions. For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\* \* \* \* \* \* \*

Plaintiff adduced the testimony of two witnesses, one of them in rebuttal of defendant's case, and also introduced several affidavits into evidence. Defendant introduced the report of a customs agent, with annexed exhibits which are part of that report. The official documents, transmitted to the court with plaintiff's appeal, were received in evidence.

Defendant's brief removes from contention several of the statutory elements of plaintiff's claimed export value, reciting that

"the parties are in agreement that the involved sales were made in the ordinary course of trade; that the prices did not vary in accordance with the quantity purchased; that the location of the principal market was in the area of Port-of-Spain, Trinidad; that the invoice prices included packing and all other expenses incidental to placing the merchandise in condition, ready for shipment to the United States; that the seller imposed no conditions or restrictions upon the purchaser's use or disposition of the merchandise; that no similar merchandise was sold, or offered for sale, in the principal market of Trinidad for exportation to the United States (although similar merchandise, manufactured elsewhere, was apparently sold in that market for home consumption); and that (if relevant) plaintiff purchased the involved merchandise for resale otherwise than at retail." (Defendant brief, p. 9.)

This leaves in contention, as both parties have made clear, the question whether the prices at which plaintiff, a selected purchaser, bought the merchandise at bar, are prices that fairly reflect the market value of such merchandise at the time of exportation from Trinidad. If so, then the merchandise may be deemed to have been "freely sold" for export within the scope of section 402(b), as defined in section 402(f). If the prices of the merchandise on sale by plaintiff's subsidiary to plaintiff do not fairly reflect the market value at the time of exportation from Trinidad, then the transaction does not meet the statutory test, the merchandise was not "freely sold", and there is no export value.

As is well known, the provision of section 402(f) with respect to selected purchasers is a relatively new provision in tariff legislation. The leading case on selected purchasers is *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, affirming *idem*, 50 Cust. Ct. 529, A.R.D.152.

The court there stated that the "question of whether or not there was an export value for merchandise such as or similar to that here undergoing appraisement depends, therefore, upon the existence of sales in the ordinary course of trade at prices which fairly reflect the market value of the merchandise." *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, at page 534.

In *Acme* the country of export was Canada. Sales there for export to the United States were made solely to the selected purchaser, parent of the Canadian subsidiary. There was evidence, however, of sales of comparable merchandise in the Canadian market for domestic consumption. The principle decided in *Acme* was that prices on sales in the ordinary course of trade in the foreign market, but for domestic consumption, may be considered in determining whether the prices that were paid by the selected purchaser for export to the United States fairly reflect market value in the country of export.

In language approved by our appeals court, the appellate term said:

\* \* \* We do not read the phrase "ordinary course of trade" as limited to sales for exportation to the United States, but rather construe it as embracing the usual practices surrounding all sales of such or similar merchandise. Seemingly, the object of considering sales in the ordinary course of trade was to prevent occasional or fugitive or transitory sales from exercising any effect upon the value of imported merchandise. But where sales are made in the regular course of business, it is appropriate to consider such transactions to ascertain the price which fairly reflects the market value of the merchandise. [*United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, A.R.D. 152, at pp. 534, 535.]

In *Union Carbide Corporation* v. *United States*, 58 Cust. Ct. 821, A.R.D. 222, the appellate term followed the judicial construction enunciated in *Acme*. Weighing the evidence of record, it was held in the *Union Carbide* case that the evidence adduced by plaintiff had been insufficient to establish that the prices paid by the selected purchaser fairly reflected market value.

Also, in *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 58 Cust. Ct. 834, A.R.D. 223, the appellate term followed, as the trial judge below also did, the rule laid down in the *Acme* case. However, in weighing the evidence that had been adduced by plaintiff in the *Tower* case, the court found that plaintiff had not shown, by sufficient proofs, what the selling expenses were which, it claimed, accounted for the difference in prices between those charged to the selected purchaser for export to the United States and the prices that were charged in the Canadian market for sales in Canada. The decision turned on the facts of record. The rule of law laid down in *Acme* was affirmed.

What distinguishes these earlier cases from the present case, is the fact that there the proofs weighed, as evidence of prices that fairly

reflect market value, were proofs as to prices on sales for domestic consumption in the country of export, while here the proofs include facts both as to sales for domestic consumption and sales for export to countries other than the United States. Granted that sales for domestic consumption have probative value, under the *Acme* rule, the question is whether prices on sales for export to countries other than the United States are relevant evidence of prices which fairly reflect the market value of the merchandise in the country of exportation.

Plaintiff argues that the effect of the *Acme* decision giving consideration to sales in the foreign market, other than sales for export to the United States, is, in effect, to reinstate the discarded concept of foreign value as a basis for appraisement. What seems to be overlooked in that argument is that Congress, in order to provide safeguards against the possible "rigging" of export value through sales at non-market prices to selected purchasers, introduced into the law a new concept that is applicable *only* in sales to selected purchasers. This new concept is the extension of the definition of "freely sold or, in the absence of sales, offered for sale" to include the requirement that sales or, in the absence of sales, offerings in the ordinary course of trade at wholesale to the selected customer shall be *"at a price which fairly reflects the market value . . ."*. (Sec. 402(f) ; emphasis added.) Only where such market value is fairly reflected in the price paid by the selected customer, is valuation permissible on the basis of export value.

Whatever is relevant to market prices at wholesale in the ordinary course of trade in the country of exportation, is proper evidence for the court to consider under this new concept, whenever an importer claims that there existed, in fact and in law, an export value for the merchandise which it, a selected purchaser, imported. All sales in the foreign market are or may be relevant to this question of appraisement basis, that is, whether there is or is not an export value for the merchandise. As our appeals court said in *Acme Steel*, *supra*, the phrase "ordinary course of business" is not limited to sales for export to the United States. Rather, it embraces the usual practices surrounding *all sales* of such or similar merchandise.

The evidence here is clear that sales were made in Trinidad for export to non-affiliated purchasers in several countries at prices substantially higher than the prices paid by the selected purchaser in the United States, sole importer of the merchandise. The prices on domestic sales and on sales for export to the United States and to other countries, for each of the six categories of merchandise at bar, exhibit a considerable variation, as follows:

| Dura Blend | Invoice prices to selected purchaser, per tooth | Domestic sales in Trinidad | Sales to non-affiliate customers in France, Germany, United Kingdom, etc., per tooth |
|---|---|---|---|
| | U.S. Currency | Trinidad Currency | U.S. Currency |
| Anteriors_____ | 6. 26¢ | 62¢ per 6 | $0. 13 |
| Characterized Anteriors_____ | 9. 65¢ | 99¢ per 6 | 0. 17 |
| Synchronized Posteriors _____ | 5. 89¢ | 54¢ per 8 | 0. 13 |
| FLX Posteriors__ | 6. 62¢ | 54¢ per 8 | 0. 13 |
| Shear Kusp Posteriors | 6. 64¢ | 54¢ per 8 | 0. 13 |
| Myerson & Sears Dura Blend Posteriors_____ | 5. 87¢ | 54¢ per 8 | 0. 13 |

The domestic sales in Trinidad were also to a selected purchaser, that is, a corporate affiliate.

Evidence as to sales in Blackpool, England, for export to Trinidad, is not evidence bearing on export value of merchandise imported into the United States from Trinidad. Whatever the market in Blackpool might be, it is not the market in Trinidad.

Plaintiff's proofs do not help the court to reconcile the price differentials that are shown by the proofs. What is needed, for such reconciliation, are—as a minimum—facts that show the differing costs, if any, that enter into the different prices.

It appears that plaintiff rests its case chiefly on the legal argument that sales in the Trinidad market, other than sales for export to the United States, are not relevant as evidence of prices that fairly reflect the market in Trinidad. The court does not accept this narrow construction of language which Congress seems to have made purposefully broad. All such sales are or may be relevant evidence of market conditions in Trinidad. The evidence here is that the prices paid by the selected purchaser in the United States were substantially lower than other prices, and they seem not fairly to reflect the market value of

the merchandise in Trinidad as evidenced by sales to non-affiliated customers.

Plaintiff complains that the "Government did not choose to explain the exact mathematical basis of the appraisement." (Plaintiff brief, p. 12.) Defendant has, of course, no obligation to offer such explanation.

Plaintiff has failed to establish that the merchandise at bar was freely sold or offered for sale, within the statutory definition of section 402(f). Hence, plaintiff has failed to establish one of the essential bases for finding that an export value existed. The presumption that the appraisement on the basis of constructed value is correct, and at the values which the Government found, has not been overcome.

The court finds facts, as follows:

1. The merchandise at bar consists of plastic artificial teeth, exported from Trinidad, W.I., on March 29, 1963.

2. Said merchandise was not included in the Final List (T.D. 54521) promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956.

3. The transaction at bar is between corporate affiliates; the exporter from Trinidad, Myerson Tooth Company, Ltd., is the wholly owned subsidiary of plaintiff.

4. Merchandise such as or similar to the merchandise at bar was sold in Trinidad for export to the United States only to plaintiff, but was sold in Trinidad also for domestic use (to an affiliate) and for export to other countries (including sales to non-affiliates).

5. The prices at which such merchandise was sold in Trinidad varied. Where sales were made to affiliated purchasers, prices were substantially lower than were the prices on sales to non-affiliated purchasers.

6. There are certain generalized statements but no evidentiary facts reconciling the price differentials in the Trinidad market.

7. The merchandise at bar was appraised on the basis of constructed value.

The court concludes, as a matter of law, as follows:

1. The transaction at bar is a sale to a selected purchaser.

2. Sales of such or similar merchandise in the ordinary course of trade at wholesale in the market of the country of exportation, whether for domestic use or for export from that country to the United States or elsewhere, are evidence that is to be weighed in deciding whether the price paid by the selected purchaser is a price which fairly reflects the market value of the merchandise.

3. On the evidence of record, the prices paid by the selected customer do not fairly reflect the market value of such or similar mer-

chandise in sales at wholesale in Trinidad, the country of exportation.

4. Plaintiff has failed to show by sufficient proofs that there was an export value for the merchandise at bar.

5. Plaintiff has failed to overcome the presumption that constructed value is the basis proper to appraisement and that the appraised values are correct.

Judgment will be entered accordingly.