**MYERSON TOOTH CORPORATION**

v.

**UNITED STATES.**

**A.R.D. 273; Reappraisement R65/19902.**

United States Customs Court,
First Division, Appellate Term.
June 19, 1970.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for appellant.

William D. Ruckelshaus, Asst. Atty. Gen. (Glenn E. Harris, New York City, trial attorney), for appellee.

Before WATSON, MALETZ, and RE, Judges.

WATSON, Judge:

This case is before the court on an application for review of the decision by Senior Judge Donlon in Myerson Tooth Corporation v. United States, 61 Cust.Ct. 540, R.D. 11597 (1968), in which the appraisement of certain plastic artificial teeth on the basis of contructed value was sustained.

■ Appellant claims that it has successfully proved an export value for the merchandise in question. Since appellant is the parent company of the manufacturer and a selected purchaser, it must prove that the price it paid is one which "fairly reflects the market value of the merchandise" pursuant to section 402(f) (1) (B) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

At the trial, appellant attempted to establish such a market value by proving that the manufacturer, Myerson Tooth Company, Ltd. (hereinafter called Meyerson, Trinidad) sold similar merchandise in the Trinidadian domestic market at a price close to that paid by appellant. Appellee introduced evidence below proving that Myerson Trinidad also sold such merchandise to third countries at a price much higher than that paid by the selected purchaser herein. On these facts the trial court decided that appellant had failed to prove that the price it paid was a fair reflection of the market value of the merchandise. The court based its decision on the ground that all sales of such merchandise, whether they are domestic sales in Trinidad or sales in Trinidad to third countries, were relevant evidence of the market value. In addition, the trial judge made a related holding that appellant had failed to account for the difference between the higher prices to third countries and the prices contended for herein.

Appellant assigns as error these holdings by the trial judge and the additional holding that the domestic sales in Trinidad were sales to a corporate affiliate. Before turning to the substance of the arguments herein, we note that the trial judge's characterization of the domestic purchaser from Myerson Trinidad as a corporate affiliate appears to be an oversight and we restate the relationship between those parties to be that of seller and selected purchaser. This characterization by the trial judge, however, had no bearing on the substance of the decision.

The issue herein, stated quite simply, involves the meaning of the word "market" as used in section 402(f) (1) (B), supra, particularly the scope of said market as a place in which to find a value for purposes of comparison with the price to a selected purchaser. The trial judge was of the opinion that for the purposes of determining the market value the investigation in the home market is not limited to home sales for export to the United States or to home sales for home consumption but also properly includes investigation of sales in the home market to third countries. The trial judge states succinctly that "[w]hatever is relevant to market prices at wholesale in the ordinary course of trade in the country of exportation, is proper evidence for the court to consider under this * * * concept, whenever an importer claims that there existed, in fact and in law, an export value for the merchandise which it, a selected purchaser, imported." The trial judge also relied on the leading case of United States v. Acme Steel Company, 51 CCPA 81, C.A.D. 841 (1964).

After reviewing the record in this case, and weighing the arguments on appeal, we are of opinion that the decision below should be affirmed. We derive this opinion from our views concerning the language and philosophy of the statutory provisions regarding selected purchasers and from our understanding of the legal precedents in this court and in our appellate tribunal.

The provisions for a selected purchaser were designed to permit the application of an export value standard to transactions which, by reason of the restrictive relations between the parties, might otherwise have been denied such

treatment.. The selected purchaser is given the opportunity to demonstrate that despite his special standing, the price he pays is one which does indeed fairly reflect the market value of the merchandise. This places the focus of attention on the home market, that is to say, the market in the country of manufacture. From the price in that market a standard is established by which the price to the selected purchaser is judged. There is nothing in the statute to indicate that the market value to be used as a standard is restricted in scope to anything less than the value in the entire market of the country of manufacture. The language of the statute permits the. use of information regarding all sales of such merchandise be they for home consumption or for consumption in other countries.

In United States v. Acme Steel Company, *supra*, our appellate tribunal was faced with the interpretation of the statutory provisions regarding proof of export value by a selected purchaser. In that case, the court permitted the price of sales in the home market of the manufacturer to serve as the standard against which the price to the selected purchaser was judged. Admittedly, the prices used as a standard therein were prices for domestic sales in the country of manufacture. However, the rationale of the decision was one which clearly set forth the view that all sales in the home market are appropriate for consideration in ascertaining a price which fairly reflects the market value of the merchandise. The court stated:

> We find ourselves in harmony with the view expressed by the majority that all sales in the ordinary course of trade are proper for consideration .in ascertaining the price which fairly reflects the market value of the merchandise and that evidence of price, and hence the value of goods in the foreign market, is relevant to the ultimate determination of the export value of imported merchandise within

the ambit of section 402(b) of the Tariff Act of 1930, as amended, *supra*, in the case of sales to selected purchasers.

It happens to be the case that most of the decisions since United States v. Acme Steel Company, *supra*, have dealt with the issue of selected purchaser and the market value from which to judge a fair reflection in the context of prices for home consumption in the country of exportation. This, however, does nothing to detract from the legitimacy of making an inquiry into sales in the country of exportation for consumption in third countries. Such proofs of prices for export to third countries would, if they are reconcilable with the price to a selected purchaser, buttress the arguments of the selected purchaser. If they were not, they would tend to cast doubt on the "fairness" of the price in question.

It must be borne in mind that the scope of inquiry which we justify in this decision is not a mandatory one. That is to say, it may be sufficient in a given situation for the selected purchaser to prove only that the price it pays reflects the price for home consumption in the country of manufacture. See Intercontinental Fibres, Inc. v. United States, 64 Cust.Ct. ——, R.D. 11692 (1970), application for review pending. Proof regarding sales to other countries may assist the selected purchaser in proving that its price is a fair reflection of the market value in a situation where sales in the home market are nonexistent or discredited in some manner, or may, as here, help the defendant to discredit the price set forth as export value and supported solely by the proof of sales for home consumption.

■ Appellant argues that permitting proof of the price to third countries acts as a restoration of the obsolete concept of "foreign value" eliminated from the valuation statute by the Customs Simplification Act of 1956 and is contrary to the goal, expressed at that time,[1] of simplifying customs administration by

1. House Report No. 858, 84th Congress, 1st Sess. (1955).

reducing the number of investigations made abroad. We note in reply that the inquiries we permit herein are limited to the case of a selected purchaser and do not constitute a restoration of foreign value in anything resembling its former scope. The plain language of the statute and our view of the legislative intent embodied therein are weightier than general goals regarding administrative simplification.

■ We find that the trial judge was correct in admitting such evidence as related to the price of the articles in question in the home market for sale to third countries, in particular exhibit A containing a customs agent's report on prices to third countries. Furthermore, the trial judge was correct in excluding from evidence the pricing information contained in a letter from appellant's executive vice president to the United States appraiser's office in Boston. The record reveals that an adequate foundation for the acceptance of the accuracy of the figures contained therein was not laid. Consequently, the record is devoid of any information which would adequately explain the difference between the price to the selected purchaser and the higher prices in sales to Europe.

■ In conclusion, we hold that the trial judge correctly decided that the invoice prices herein did not fairly reflect the market value of the merchandise and that appellant consequently had failed to prove an export value pursuant to section 402(b) of the Tariff Act of 1930, as amended.

In light of the foregoing this court finds as facts the following:

1. The merchandise consists of plastic artificial teeth exported from Trinidad on March 29, 1963.

2. Said merchandise is not on the Secretary's final list, T.D. 54521.

3. Said merchandise was appraised on the basis of constructed value as defined in section 402(d), Tariff Act of 1930, as amended by Customs Simplification Act of 1956.

4. The merchandise in question was sold in Trinidad for export to the United States only to the appellant.

5. Merchandise such as, or similar to that in question, was sold in Trinidad for home consumption and for export to other countries during the period in question.

6. The prices at which such merchandise was sold for home consumption were substantially the same as the prices to the selected purchaser herein.

7. The prices at which such merchandise was sold to other countries were substantially higher than the prices to the selected purchaser herein.

8. There is no evidence to reconcile the differences between the prices to other countries and the prices to the selected purchaser herein.

The court concludes as matters of law:

1. The transaction at bar is a sale to a selected purchaser.

2. Sales of such or similar merchandise in the ordinary course of trade at wholesale in the market of the country of exportation, whether for domestic use or for export from that country to the United States or elsewhere, are evidence that is to be weighed in deciding whether the price paid by the selected purchaser is a price which fairly reflects the market value of the merchandise.

3. On the evidence of record, the prices paid by the selected customer do not fairly reflect the market value of such or similar merchandise in sales at wholesale in Trinidad, the country of exportation.

4. Appellant has failed to show by sufficient proofs that there was an export value for the merchandise at bar.

5. Appellant has failed to overcome the presumption that constructed value is the proper basis for appraisement and that the appraised values are correct.

Judgment will be entered accordingly.