SERVICE AFLOAT, INC., and Howard Hartry, Inc.

v.

UNITED STATES.

R.D. 11734; Reappraisement R66/21752.

United States Customs Court,
Feb. 4, 1971.

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen. (Frederick L. Ikenson, New York City, trial attorney), for defendant.

MALETZ, Judge:

This appeal for reappraisement involves a pleasure boat invoiced as a "Grand Banks 42 No. 2 Twin Screw Cruiser" (hereafter referred to as the

"Grand Banks 42") that was built in Hong Kong by American Marine Ltd. and imported in 1965 by the plaintiff-purchaser, Service Afloat, Inc. of Newport Beach, California.[1] The parties agree that the correct basis of appraisement is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(b)).[2]

The boat was invoiced and entered at $24,680, including $2,400 for American goods returned. However, the government appraised it at $35,448, including $2,400 for American goods returned. Plaintiffs claim that the proper value of the boat is the invoice price of $24,680, including an amount for American goods returned. The finding and amount of American goods returned are not in controversy.

Section 402(b) of the Tariff Act of 1930, as amended (19 U.S.C. § 1401a(b)), reads as follows:

(b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, as amended (19 U.S.C. § 1401a(f)), reads in part:

(f) *Definitions.*—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*  \*  \*  \*  \*  \*

One witness testified at trial, Robert J. Newton, the president of American Marine Ltd. of Hong Kong—a company which was in the business of building pleasure boats and which built and sold the boat in issue here. Newton testified that before American Marine became involved in the export trade, it sold a number of its small boats in Hong Kong,[3] and that when it first began exporting to the United States, it sold only through one selected dealer, Products of Asia. He indicated that he was acquainted to some extent with the activities of other boat builders in Hong Kong and that the larger boat builders there likewise sold only through selected dealers in the United States. American Marine, he added, sold only through selected wholesalers because of the volume of sales involved, and in this respect likened the company to an automobile man-

---

1. Howard Hartry, Inc., the other plaintiff, is a customhouse broker.

2. The importation is not on the Final List.

3. The witness did not consider the Grand Banks 42 to be a small boat.

ufacturer which, for purpose of convenience, sells cars throughout the country through selected dealers.

Newton stated that for its stock boats, such as the Grand Banks 36 and Magellan 35, American Marine had a distributor but not on an exclusive basis. However, the Grand Banks 42 model was not included in that distributorship. He testified that the price to Service Afloat for the Grand Banks 42 in issue, as reflected on the invoice, was the actual amount American Marine received from Service Afloat; that no additional amounts were received from Service Afloat for the boat; and that American Marine did not pay anyone a commission on the sale.

He further testified that American Marine offered the Grand Banks 42 model to other dealers in the United States at the same price it sold it to Service Afloat; that the price to Service Afloat was an f. o. b. price; and that at the time in question, the Grand Banks 42 was almost invariably sold one at a time. He added that in 1964—the year before the present importation—the plans for building the Grand Banks 42 were not complete, and for that reason it was not then offered for sale.

Continuing, Newton testified that there were no other manufacturers in Hong Kong of boats of the same class as the Grand Banks 42 since, in his view, that model was unique. This uniqueness, he said, consisted of its ability to go to sea in a gale force wind and come back. Elaborating, he indicated that the Grand Banks 42 was much heavier than the average boat of the same size, and that it had other unique features, such as the depth of the keel, the shape of the hull, etc. He stated that to the best of his knowledge, no stock boats built anywhere in the world had the weight, qualify and design of the Grant Banks 42.

Against this background, a basic question in the case is whether the invoice price to Service Afloat for the Grand Banks 42 in question "fairly reflects the market value of the merchandise" within the meaning of section 402(f) (1) (B). As to this, plaintiffs argue that the answer is in the affirmative on the basis that the evidence shows that that price was the only price at which American Marine in 1965 was offering and selling the Grand Banks 42 for export to the United States. But we cannot agree that this is sufficient in the circumstances of this case to satisfy the fair reflection of market value test. For such evidence—even assuming it to be non-conclusory and thus entitled to probative weight [4]—contains nothing whatever therein to show whether boats such as the Grand Banks 42 were sold in the home market, Hong Kong, and/or in third countries, let alone the prices at which such boats were sold in those markets. "[I]n order to provide safeguards against the possible 'rigging' of export value through sales at non-market prices," comparison of home market and third country selling prices with the invoice price to the selected purchaser here is an extremely important factor in determining whether the invoice price fairly reflects market value. Myerson Tooth Corporation v. United States, 61 Cust.Ct. 540, 544, R.D. 11597 (1968), aff'd 64 Cust.Ct. 860, A.R.D. 273, 313 F.Supp. 1016 (1970). See also e. g., United States v. Acme Steel Company, 51 CCPA 81, C.A.D. 841 (1964). And the complete absence of evidence in the record on this score forecloses any possible reliance on that safeguard here.[5]

It may be observed that if merchandise exported to the United States is not

---

4. *Cf.,* e. g., Mannesmann-Meer, Inc. v. United States, 62 Cust.Ct. 1023, 1027–28, A.R.D. 253 (1969), aff'd 58 CCPA, C.A.D. 995 (1970).

5. Greb Industries, Ltd. v. United States, 64 Cust.Ct. 608, R.D. 11691, 308 F. Supp. 88 (1970)—on which plaintiffs place major emphasis—is simply not in point. For in contrast to the situation in the present case, in *Greb* the evidence showed (1) the price at which merchandise such as the imported merchandise was sold in the home market, Canada; and (2) that the home market price was the same as or lower than the export price to the United States.

sold in the home market or in third countries, the price at which it was sold to a selected purchaser in the United States may still be found to fairly reflect its market value. The safeguard in that event is that the evidence must show that that price resulted from bona fide negotiations between the parties and was high enough to include all costs of production and a profit. United States v. F. W. Myers & Co., Inc., 63 Cust.Ct. 706, A.R.D. 264, 306 F.Supp. 1396 (1969). But again no such showing has been made here—or even attempted.

In summary, it is concluded that plaintiffs have failed to prove that the value they claim for the boat in question fairly reflects its market value. The appraised value is therefore affirmed and the appeal for reappraisement is dismissed. Judgment will be entered accordingly.