which the Phenidone was freely offered for sale and sold was in the ordinary course of trade.

3. That, at the times of exportation, the Phenidone was freely sold to all purchasers in the United States in usual wholesale quantities of one ounce.

4. That United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for the appraisement of the Phenidone and that such values are the appraised values.

The judgment below is affirmed.

(A.R.D. 293)

ELLIS SILVER CO., INC. v. UNITED STATES

Entry No. 889863, etc.

Third Division, Appellate Term

(Decided August 5, 1971)

*Lane, Young & Fox* (*James G. McGoldrick* of counsel) for the appellant.
*L. Patrick Gray, III*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the appellee.

Before RICHARDSON, LANDIS and MALETZ, Judges

LANDIS, Judge: This case [1] is before us on application to review the decision and judgment of the single judge in a reappraisement proceeding involving the dutiable value of certain silver-plated hollowware (silver plate on copper), exported from England during the period December 9, 1959 to October 5, 1962. *Ellis Silver Co., Inc.* v. *United States*, 63 Cust. Ct. 647, R.D. 11688, 308 F. Supp. 704 (1969).

The merchandise, entered at New York, was appraised on the basis of constructed value under section 402(d) of the Tariff Act of 1930, as amended, 19 U.S.C., section 1401a(d), a permissible basis "if neither

---

[1] Five appeals for reappraisement were consolidated for trial.

the export value nor the United States value can be determined satisfactorily", 19 U.S.C., section 1401a(3).

Appellant (plaintiff below) claims that the proper basis for valuation is export value under section 402(b), as amended, 19 U.S.C., section 1401a(b).

Export value, in the relevant terms of that valuation basis, is defined in section 402, as amended, as follows:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

> *          *          *          *          *          *          *

> (f) DEFINITIONS.—For the purposes of this section—
> (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
> > (A) to all purchasers at wholesale, or
> > (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
> without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

> *          *          *          *          *          *          *

No error is raised with respect to the finding of the single judge that, on constructed value basis, the values constructed by customs were determined as follows:

> Reappraisements R61/1760 and R61/1772: Invoiced unit prices, plus 5% representing an increase in factory list prices, less 5% representing a cash discount, less 2½% distributor's discount, plus the invoiced cost of cases.

> Reappraisement R61/22688: Invoiced unit prices, plus 10% representing an increase in factory list prices, less 5% cash discount, less 2½% distributor's discount, plus the invoiced cost of cases.

> Reappraisements R62/14885 and R62/15687: Invoiced unit prices, less 5% cash discount, plus the invoiced cost of cases.

Appellant here, as it did below, claims that on export value basis, *supra*, the prices it paid in the ordinary course of trade fairly re-

flect the market value of the imported merchandise to a selected purchaser at wholesale. Those prices, appellant contends, are the same as the appraised values, when adjusted to deduct 10 percent instead of the 2½ percent distributor's discount deducted in R61/1760, R61/1772 and R61/22688, and when adjusted to deduct an additional 10 percent distributor's discount, before adding the cost of packing cases, in R62/14885 and R62/15687.

Upon weighing the evidence, the single judge concluded that: (1) appellant was a selected purchaser, (2) the record "failed to establish that the prices paid fairly reflect the market value of the merchandise" on export value basis, *supra*, (3) the values constructed by customs did not "conform to the formula prescribed by section 402(d)", and (4) appellant having failed to sustain "its burden of proving the claimed export values, the appraisements, although erroneous, remain the proper dutiable values of the merchandise."

The errors charged for review all flow from the conclusion of the single judge that the record failed to establish that the prices paid by appellant, a selected purchaser, fairly reflect the market value of the imported merchandise.

There is no dispute as to the facts established of record, which the single judge succinctly summarized in his opinion below as follows:

> The silverplated hollowware, the appraised values of which are contested, was manufactured by Ellis & Co. (Birmingham), Ltd. Ellis Silver Co., Inc. was a wholly owned subsidiary of the foreign seller, and was engaged in importing and selling the involved merchandise to the retail trade in the United States. For many years, including 1959 to 1962, the seller sold the hollowware to plaintiff as an exclusive United States distributor. The manufacturer also sold the merchandise in England to one wholesaler, Walker & Hall, Ltd. of Sheffield, and to retailers. Additionally, the seller sold the merchandise for exportation to retailers in Canada, some Scandinavian countries, Italy, and South Africa.

> The manufacturer followed the policy and practice of selling its merchandise in accordance with a published price list (exhibit 1), which was used in conjunction with an illustrated catalog (exhibit 5). The factory list prices were allegedly based upon cost of materials, labor, factory overhead, selling and advertising expense, management overhead, plus a 33⅓% mark up for profit. None of the actual costs or expenses, however, are specified in the record.

> During the relevant period of time in these cases the list prices were increased twice, on January 1, 1960 and February 1, 1962. These increases were communicated to the seller's customers by letters (exhibits 2 and 3) when such increases were to be ef-

fective prior to the publication of a new price list brochure (exhibit 4B). The price increases were "across the board," and were expressed in the letters in terms of a percentage addition to the factory list prices currently in effect, viz.: list price, plus 5% (exhibit 2) or list price, plus 10% (exhibit 3).

The seller granted all its customers a discount for cash, ranging from $2\frac{1}{2}\%$ to 5%, and two purchasers were allowed a wholesaler's or distributor's discount of 5% or 10%. The wholesaler in England (Walker) received a cash discount of $2\frac{1}{2}\%$ and a trade (wholesaler's) discount of 5%, while retailers in England received only a $2\frac{1}{2}\%$ cash discount. Plaintiff, on the other hand, was granted a 5% cash discount and a 10% distributor's discount on all purchases. Customers in Canada received only a cash discount, which varied from $2\frac{1}{2}\%$ to $3\frac{3}{4}\%$, while customers in other "third countries" received only a cash discount of $2\frac{1}{2}\%$. The manufacturer always sold on the basis of its published price list (plus any increases thereto) without regard to the quantity involved in the purchase. Wholesaler's or distributor's discounts were predicated upon the basis of lower distribution costs incurred by the manufacturer in sales to wholesalers as compared with sales to retailers.

The record also establishes that plaintiff acted as the exclusive agent for the manufacturer in Canada and Canadian orders were transmitted directly to the manufacturer for acceptance, delivery, and billing. On these sales, plaintiff received a commission of 10% of the list price on orders accepted. In other "third countries," the manufacturer was represented by selling agents who received a commission of either 5% or 10% of the list price on orders accepted by the manufacturer. [The Scandinavian agent, J. W. Bodington of Birmingham, England, received a 5% commission plus an undisclosed amount for traveling expenses. Agents in Italy and South Africa received a 10% commission.]

The selling prices to plaintiff in these cases represent the factory list prices, plus any price increase (either 5% or 10%), less a 5% cash discount, less a 10% distributor's discount, plus the invoiced cost of the packing cases. The sales were all ex-factory Birmingham, and the seller did not impose any restrictions on the disposition or use of the merchandise, except for territorial restrictions on resale. [63 Cust. Ct., pages 650–652.]

On the narrow issue of whether the prices at which the merchandise was sold to appellant, a selected purchaser, fairly reflected market value (the dispositive issue in this review), and his consideration of legal precedents addressed to proof of that issue, the single judge evaluated that:

 * * * notwithstanding that plaintiff's evidence clearly establishes that the merchandise was sold for home consumption and for exportation to third countries at higher prices than those charged plaintiff, this fact alone would not preclude the lower selected purchaser prices from fairly reflecting market value.

However, since the involved merchandise was sold at a higher price in the home market and for exportation to third countries, than for exportation to the United States, plaintiff's proofs must help the court reconcile the price differentials in order to establish that the price to plaintiff fairly reflected the market value. Such reconciliation must, as a minimum, be based upon a showing of the differing costs or expenses, if any, that entered into the different prices. *Myerson Tooth Corporation, supra* [61 Cust. Ct. 540, R.D. 11597 (1968), aff'd 64 Cust. Ct. 860, A.R.D. 273, 313 F. Supp. 1016 (1970)]; *C. J. Tower & Sons, supra* [60 Cust. Ct. 938, A.R.D. 233 (1968)]; *The American Greiner Electronic, Inc.* v. *United States*, 62 Cust. Ct. 905, R.D. 11658, 298 F. Supp. 313 (1969) * * * [aff'd on review, *United States* v. *The American Greiner Electronic, Inc.*, 66 Cust. Ct. 644, A.R.D. 289 (1971)]. No such evidence was adduced in this case. [63 Cust. Ct., page 654.]

The sole contention appellant brings to this review is that in terms of "market value" of the imported merchandise the prices to the selected purchaser fairly reflect market value. In *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, 536, A.R.D. 152, 216 F. Supp. 448, 454 (1963), affirmed 51 CCPA 81, C.A.D. 841 (1964), this court accepted the following definition of market value reiterated in prior decisions:

Market value has been defined as the price at which the manufacturer holds his merchandise for sale, the price at which he freely offers it in the market, and the price which he is willing to receive, and the purchasers are willing to pay, in the ordinary course of trade. * * *

Upon consideration of the facts showing that merchandise, such as that imported, was sold for home consumption in England and for exportation to third countries at prices higher than those charged appellant, and in the absence of proofs reconciling the price differentials, we agree with the trial judge that there is, in effect, no substantial basis or criteria for determining that the prices to the selected purchaser in the United States, fairly reflect the market value of the imported merchandise.

The findings and conclusions of the trial judge are, accordingly, incorporated herein and the judgment below is affirmed.