(A.R.D. 307)

C. H. POWELL CO., INC. *v.* UNITED STATES

Entry No. 733051.

Second Division, Appellate Term

(Decided October 19, 1972)

*Allerton deC. Tompkins* for the appellant.

*Harlington Wood, Jr.*, Assistant Attorney General (*Andrew P. Vance* and *Bernard J. Babb*, trial attorneys), for the appellee.

FORD, Judge: This case is before us on an application for review of the decision and judgment in *C. H. Powell Co., Inc.* v. *United States*, 67 Cust. Ct. 493, R.D. 11752 (1971), wherein the trial court affirmed the appraised values of certain key chains designated as article Nos. 70 and 80.[1] The merchandise does not appear on the Final List, T.D. 54521, and the parties agree that export value, section 402(b), Tariff Act of 1930, as amended, is the proper basis of appraisement. The key chains, article Nos. 70 and 80, were invoiced and entered at $1.70 per gross, net packed, and $1.63 per gross, net packed, respectively. They were appraised at $2.00 and $1.93 per gross, net packed, respectively.

Pertinent are sections 402(b) and 402(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. Section 402(b) reads as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) reads as follows:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
　　(A) to all purchasers at wholesale, or
　　(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

---

[1] Article No. 8108, appraised as entered, is not involved herein.

The trial court in its decision set forth a rather comprehensive digest of the record herein which we adopt.

Primarily appellant urges consideration of export value on the basis of being a selected purchaser as defined in section 402(f)(1)(B) at the entered value. Alternatively it is contended by appellant that if found not to be a selected purchaser, the evidence establishes the merchandise to be freely sold or offered for sale to all purchasers under said section 402(b), *supra*.

By statute, 28 U.S.C. § 2633, the appraised value is presumed to be correct. It is the burden of the party challenging its correctness to establish the appraised value to be incorrect and affirmatively establish the correct value. The basis of appraisement agreed upon by the parties, export value under section 402(b), *supra*, is the price at which such or similar merchandise at the time of exportation was freely sold or, in the absence of sales, offered for sale for exportation to the United States.

Section 402(f)(1)(A) defines "freely sold or, in the absence of sales, offered for sale" as meaning to all purchasers at wholesale while subsection (B) refers to such transactions in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value. Accordingly, appellant had the burden of establishing either that the involved merchandise was freely sold or, in the absence of sales, offered for sale to all purchasers at wholesale or to one or more selected purchasers at wholesale at a price which fairly reflects the market value.

In order to logically approach this issue, consideration will be given first to the alternate claim of appellant, i.e., that such merchandise was freely sold or offered for sale to all purchasers.[2] The trial court concluded that article Nos. 70 and 80 involved herein were not freely sold or offered for sale to all purchasers at wholesale. This was based upon the lack of probative evidence to establish such a fact and the affirmative evidence which establishes that sales of article Nos. 70 and 80 would be made by the manufacturer only if E. A. Adams, the actual importer herein, did not take the entire output of said merchandise. Appellant admits this fact. The trial court was cognizant of the fact that under such circumstances, if the merchandise were freely offered to all who cared to buy, it did not make the importer a selected purchaser. *Judson Sheldon International Corporation et al. v. United States*, 67 Cust. Ct. 577, A.R.D. 295 (1971); *United States v. Thomas P. Gonzalez Corp.*, 66 Cust. Ct. 597, A.R.D. 283 (1971); *National Carloading Corp. v. United States*, 43 Cust. Ct. 531, R.D. 9535 (1959), *aff'd, United States v. National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125 (1961). However, the trial court was of the opinion, with

---

[2] *Aceto Chemical Co., Inc. v. United States*, 51 CCPA 121, C.A.D. 846 (1964).

which we agree, that the record fails to establish that said key chains were freely offered for sale to all purchasers. A mere statement of the manufacturer that if Adams did not agree to take the entire output, he would have actively sought other wholesale buyers on the same terms and conditions does not satisfy the statutory requirement of freely offering the merchandise. *Kuttroff, Pickardt & Co.* (Inc.) v. *United States*, 14 Ct. Cust. Appls. 176, T.D. 41698; *Delmonico International Corp.* v. *United States*, 52 Cust. Ct. 656, A.R.D. 176. It in fact affirmatively establishes that the merchandise was not freely offered. Further affirmation of the fact that said merchandise was not freely offered is the statement in the affidavit received as plaintiff's exhibit 7B explaining the contract attached to said exhibit and marked "HSL-1". Whether the contract was exclusive or not, the explanation in said exhibit 7B of being in default in shipping the merchandise clearly places the manufacturer in a position of not being able to freely offer said merchandise. All of the foregoing relates to "such" merchandise as defined in 402(f)(4). Insofar as similar merchandise is concerned, appellant contends that article Nos. 47 and 49 are not similar and appellee has indicated in the oral argument that the record does not establish that the appraisement was made on the basis of similarity of said article Nos. 47 and 49. In any event, there is little, if any, evidence of record which, in our opinion, establishes similarity or dissimilarity of article Nos. 47 and 49 to article Nos. 70 and 80. We do note certain differences in the components which will be discussed below regarding whether sales to a selected purchaser, which we find the importer herein to be, fairly reflected the market value.

Since we have found, as did the trial court, that Adams is a selected purchaser, the primary question for consideration by us is whether the record establishes that the prices of article Nos. 70 and 80 fairly reflect the market value as required by section 402(f)(1)(B). The statutory provision permitting sales to a selected purchaser as constituting a free offering was a step forward in recognizing the facts of life in the business world. However, certain precautions were necessary in order to prevent rigging of prices between such parties. *Robert E. Landweer & Co., Inc., a/c Robert Newton & Sons, Inc., et al.* v. *United States*, 63 Cust. Ct. 682, A.R.D. 261 (1969); *Service Afloat, Inc., Howard Hartry, Inc.* v. *United States*, 66 Cust. Ct. 519, R.D. 11734, 322 F. Supp. 396 (1971).

While we are not limiting the manner of proof in establishing whether a price fairly reflects the market value, the methods below have been accepted in establishing said value. In *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964), the court utilized the price at which the merchandise was sold in the home market or

to third countries, other than the United States, and also considered the cost of producing the article involved therein. The record in the instant case establishes there were no sales in the home market or to third countries but only sales to the importer herein. Insofar as cost of producing the articles involved, the record is barren of such evidence except on a comparison basis between article Nos. 47 and 49, and article Nos. 70 and 80. The evidence establishes that article Nos. 70 and 80 had a less expensive make chain produced in Hong Kong as compared to the imported German chain used in article Nos. 47 and 49. In addition, the brass and labor in Hong Kong in producing the chain was less than in Germany. Article Nos. 47 and 49 had polished keyrings which cost 5 cents per gross more than the unpolished keyrings of article Nos. 70 and 80. In addition, the length of article Nos. 47 and 49 was longer than article Nos. 70 and 80 which added a cost of 8 cents to 15 cents per gross. The total additional costs therefore represent 13 cents to 20 cents per gross. However, this comparison does not include all figures of the cost of producing the involved articles. A price which does not include all elements does not per se fairly reflect the market value. *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860 (1965).

In view of the foregoing, we are of the opinion that appellant has failed to make a prima facie case. The decision of the trail court sustaining the appraised value is therefore affirmed.

Since we have concluded the appraised value has not been overcome without consideration of defendant's exhibit B, any error, if there be error, is harmless. The admission of such reports under 28 U.S.C. § 2633 is discretionary with the trial judge and is an exception to the hearsay rule. A reversal of the trial judge's ruling admitting said exhibit must be based upon an abuse of discretion or a violation of the law. We find neither.

We find as matters of fact:

1. The imported merchandise herein consists of merchandise described as article Nos. 70 and 80 key chains which were exported from Hong Kong by Sun Wah Ornaments Manufactory, on or about June 13, 1964.

2. The said merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The said merchandise does not appear on the Final List, T.D. 54521.

4. There has been no abuse of discretion or violation of law in the admission of defendant's exhibit B.

5. Appellant has failed to prove values other than the appraised values.

We conclude as matters of law:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement.

2. Appellant has failed to overcome the presumption of correctness.

3. The proper dutiable values are the appraised values.

4. The decision and judgment of the trial court is affirmed.

Judgment will be entered accordingly.

(A.R.D. 308)