(A.R.D. 316)

AMPEX PROFESSIONAL PRODUCTS CO. *v.* UNITED STATES

Entry No. 3066.

Second Division, Appellate Term

(Decided June 26, 1973)

*Glad, Tuttle & White* (*George R. Tuttle, Jr.* and *John McDougall* of counsel) for the appellant.

*Harlington Wood, Jr.*, Assistant Attorney General (*Gilbert Lee Sandler*, trial attorney), for the appellee.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This is an application for review by the plaintiff below of the decision and judgment of a single judge sitting in reappraisement (*Ampex Professional Products Co. v. United States*, 68 Cust. Ct. 249, R.D. 11765 (1972)) wherein the appraised values of "6 Marconi Mark IV Television Camera Channels" and parts were sustained.

The merchandise, exported from England, was appraised on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, at the invoiced unit price, plus 11.11 percent, packed. Appellant contends the proper dutiable value as defined in section 402(b) is the invoiced unit price plus packing. The parties agree the involved merchandise does not appear on the Final List, T.D. 54521, and the proper basis of appraisement is export value as set forth in section 402(b), *supra*.

The pertinent statutory provisions as amended by the Customs Simplification Act of 1956, *supra*, are as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

(f) DEFINITIONS.—For the purposes of this section—
(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or
(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of

the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

The record consists of the testimony of three witnesses called on behalf of appellant and one exhibit received in behalf of appellant. In addition, the special customs invoice and accompanying papers were received in evidence without being marked.

The testimony of James Scott, the import specialist who made the advisory appraisement herein, establishes the addition of 11.11 percent was based upon the sales price to the Columbia Broadcasting System pursuant to a ruling of the Bureau of Customs, received in evidence as plaintiff's exhibit 1.

According to Stanley Leeson, chief of sales in Europe and the Americas for Marconi during the period of 1963–1964, the sales of television equipment by his company were limited to Ampex Professional Products Co. (hereinafter referred to as Ampex) and the Columbia Broadcasting System Television Network in New York (hereinafter referred to as CBS). Ampex was Marconi's representative in this country and sold the equipment to various television stations in the United States. CBS had a prior marketing agreement with Marconi and purchased television equipment for its own use in producing network television programs in New York and Hollywood.

Mr. Leeson testified that CBS required certain modifications of the Mark IV camera equipment such as a different color paint, their own design of focus handle and different connectors which the testimony indicates would amount to 1 percent of the value of the equip-

ment. In addition, a different yoke assembly was supplied. The yoke assembly is "a portion of the camera that contains the pick-up tube that sees the scene." The yoke was required, according to the witness, because the studio in New York is subjected to extremely high magnetic fields and the yoke ordinarly supplied would not permit satisfactory operation in such environment. The price to CBS was higher because Marconi was responsible for product maintenance, up-dating of information and modification whereas Ampex assumed responsibility for after-sales service and parts. In addition, Ampex promoted the Marconi equipment and advertised it in magazines.

Mr. Donald Kleffman, called on behalf of appellant, was video product manager of Ampex at the time of importation of the involved merchandise and was familiar with the Mark IV camera. Ampex sold the cameras to end users and provided after-sales service in addition to advertising and sales promotion.

Appellant concedes and appellee does not contest the finding by the trial court that sales in the home market or for export to Europe should not be considered in determining whether the price fairly reflects the market value since different television line standards are used in the various countries. This requires changes in the circuitry and consequently results in a dissimilar article. *C. J. Tower & Sons* v. *United States*, 50 CCPA 76, C.A.D. 824 (1963). This matter was not assigned as error and is merely set forth for the sake of clarity in disposing of the question of whether sufficient proof has been adduced with respect to the requirement that the price fairly reflects the market value.

The trial court found the appraisement, invoice unit prices plus 11.11 percent, to be separable. A party attacking such appraisement may rely upon the presumption of correctness attaching to the invoiced unit prices exclusive of the contested addition. *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967). The burden of establishing that such or similar merchandise was freely sold or offered for sale in the ordinary course of trade in accordance with the statutory definition of export value remains with the party contesting the appraisement. *B & W Wholesale Co., Inc.* v. *United States*, 58 CCPA 92, C.A.D. 1010 (1971).

Inasmuch as the parties agree that both Ampex and CBS are selected purchasers within the definition set forth in section 402(f) (1)(B), it is incumbent upon appellant to establish, in addition to the foregoing, that the price fairly reflects the market value. Ordinarily sales in the home market or to third countries may be used to establish the price as fairly reflecting the market value. However, as indicated, *supra*, such sales are not acceptable in this instance as the

camera channels are by special design and construction incapable of being used in the United States and are not commercially interchangeable. *United States* v. *Ford Motor Company*, 46 Cust. Ct. 735, A.R.D. 124 (1961). In addition to sales in the home market or to a third country, cost of production figures may be used to establish a price which fairly reflects the merchandise under consideration. *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964). The record is barren of any evidence of cost of production.

Sales to other importers in the United States may be utilized as in the case of *J. L. Wood* v. *United States*, 68 Cust. Ct. 259, R.D. 11766 (1972) (application for review pending). The customs official followed this procedure in this case since the appraisement was made on the basis of sales to the other United States purchaser, CBS.

Appellant's contention is that the modification of the focus handle, connectors and particularly the yoke made the CBS article "similar" to the one imported by Ampex. This is based upon the contention that the yoke supplied to Ampex would not function in a highly magnetic field area as is found in New York. If we were to hold that the CBS camera was "similar" and not "such", there is insufficient evidence to establish that the Ampex camera price fairly reflects the market value. Though the testimony does allude to certain after-sales services and spare parts provided to CBS and not to Ampex, evidence is lacking to establish such costs. In the absence of such evidence or proof of cost of production, there is a failure of proof in establishing the contended value. Even if we were to assume that the 11.11 percent differential was due to these after-service costs, and it is not since we are aware of the modification of the focus handle, connectors and yoke, such evidence without a further breakdown is insufficient to overcome the presumption of correctness attaching to the appraised value. *Ellis Silver Co., Inc.* v. *United States*, 67 Cust. Ct. 564, A.R.D. 293 (1971), *aff'd*, 60 CCPA 143, C.A.D. 1100 (1973).

Additionally appellant contends CBS is not an industrial user and is within the meaning of section 402(f)(1)(B), *supra*, and section 402 (f)(3), *supra*. The opinion of Senior Judge Wilson considered this matter and made the following comment:

> * * * The business of producing network programs for broadcasting on a network affiliate is a known, recognized, albeit occasionally controversial practice which constitutes a major economic factor in the billion dollar television industry. I am unable to perceive any significant difference, in assaying "industrial use" under the valuation statute, between the use of articles such as the steel strapping involved in *United States* v. *Acme Steel Company*, *supra*, and the articles at bar.

Furthermore, assiduous research into the legislative history of the Customs Simplification Act of 1956 fails to disclose any intent to give the term "industrial use" the narrow meaning ascribed to it by plaintiff. In the absence of such a showing, the appraising officer's presumptively correct finding that CBS purchased the cameras for "industrial use" has not been overcome.

For all of the reasons heretofore stated, we find the 11.11 percent addition here in question was properly included in the export value as appraised.

We adopt and incorporate by reference the facts found and the conclusions of the trial judge. The decision and judgment of the trial judge is hereby affirmed and judgment will be entered accordingly.