(C.D. 4752)

JACK BRYAN, INC. *v.* UNITED STATES

Court No. 76-2-00498

(Decided June 15, 1978)

*Glad, Tuttle & White (Edward N. Glad* of counsel) for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General *(Velta A. Melnbrencis,* trial attorney), for the defendant.

FORD, Judge: This action contests the basis of appraisement and appraised value of certain beaded parts of women's wearing apparel invoiced as style Nos. 750, 1024, 8042X, 8062, 8065, 8067, 8081, 9003 and 9502. Appraisement was made on the basis of constructed value as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. The value found by customs for the merchandise was the invoice unit values, plus 64.89 percent, net packed.

It is the position of plaintiff that the merchandise is subject to appraisement on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended, *supra,* and the proper dutiable value is the invoiced unit values, net packed. The statutory provisions of section 402, Tariff Act of 1930, as amended, *supra,* covering the merchandise involved provide as follows:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise under-going appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all

other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

\* \* \* \* \* \*

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or

constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfied all the requirements of subdivision (C) except that it was produced by another person.

The only witness whose testimony was adduced at the trial was Jack Bryan who testified on behalf of the importer. Mr. Bryan is also the owner of the manufacturer, Hung Crafts Company of Hong Kong. In addition, there were received in evidence on behalf of plaintiff nine exhibits and defendant introduced three exhibits. The official papers were also received as an exhibit, without being marked.

The action of Customs in appraising the involved merchandise on the basis of constructed value at the invoiced unit values, plus 64.89 percent, net packed, is presumed to be correct. 28 U.S.C. 2635(a). The burden placed upon plaintiff in challenging this presumption is twofold. Plaintiff must establish by competent evidence that the appraisement is erroneous and affirmatively establish the correct basis and value.

Plaintiff may meet this dual burden by establishing all the elements of export value and the proper dutiable values. This, in effect, would overcome the presumption attaching to the appraisement on the basis of constructed value in view of the statutory preference of export value over constructed value as set forth in section 402(a)(1)(3) of the Tariff Act of 1930, as amended, *supra. Majestic Electronics, Inc.* v. *United States*, 63 Cust. Ct. 628, R.D. 11686 (1969).

Alternatively, plaintiff may establish the appraisement to be erroneous and then go forward and establish the correct basis and dutiable value. Plaintiff has chosen this method by the introduction, as plaintiff's exhibit 1, of interrogatories issued pursuant to rule 6.3 of the rules of this court, in an effort to establish how Customs arrived at its appraisement.

The following questions and answers are contained in exhibit 1:

1. Q. In arriving at a constructed value as defined in section 402(d) of the Tariff Act of 1930 as amended, please say what amount was considered for the cost of the materials.—A. An individual amount for costs of materials was not determined in making this appraisement.

2. Q. In arriving at the constructed value as so defined, please state what amount was considered to be the cost of the fabrication.—A. An individual amount for fabrication was not determined in making this appraisement.

3. Q. In arriving at the constructed value as so defined, please state what amount was used for general expenses.—A. An individual amount for general expenses was not determined in making this appraisement.

4. Q. In arriving at the constructed value as so defined, please state what amount was used for profit.—A. An individual amount for profit was not determined in making this appraisement. However, the constructed values do include an 18 percent figure for profit.

5. Q. In arriving at the constructed value as so defined, please state what amount was used for packing.—A. An individual amount for packing was not determined in making this appraisement.

6. Q. Please state whether, in determining the constructed value herein, any amount was included to cover any alleged assists given to the manufacturer by the importer.—A. Yes.

7. Q. If the previous question is answered in the affirmative, please state what you contend was the nature of the assists.—A. Design and pattern costs.

8. Q. If question 6 is answered in the affirmative, please state what amount was included in the constructed value as the value of the alleged assists.—A. An individual amount for assists was not determined in making this appraisement.

While the appraising officer may use "all reasonable ways and means" or "best evidence available" in ascertaining the value, as prescribed by section 500 of the Tariff Act of 1930, as amended by the Customs Courts Act of 1970, and section 402(g), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra*, he may not use a method which contravenes the statutory requirements prescribed by section 402(d), *supra*, under which appraisement was made.

It is evident from exhibit 1 that Customs has disregarded the statutory elements set forth in section 402(d) and therefore the appraisement is erroneous. *Greb Industries, Ltd.* v. *United States*, 64 Cust. Ct. 608, R.D. 11691, 308 F. Supp. 88 (1970); *Ellis Silver Co., Inc.* v. *United States,* 63 Cust. Ct. 647, R.D. 11688, 308 F. Supp. 704 (1969), *aff'd*, 67 Cust. Ct. 564, A.R.D. 293 (1971), *aff'd*, 60 CCPA 143, C.A.D. 1100 (1973).

Mr. Bryan testified the beaders in Hong Kong sold to one selected purchaser, since each purchaser did not desire his designs sold to others in the trade. This, according to the witness, was common practice. Based upon this testimony and the reason for selling to a selected purchaser, the court considers the practice to be in the ordinary course of trade and plaintiff to be a selected purchaser. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846 (1964).

Defendant contends the record is silent on the statutory language of section 402(f)(1), *supra*, relating to offers for sale. While this is true, the testimony of Mr. Bryan relative to the practice of beaders restricting sales of particular designs to a selected purchaser eliminates the necessity for such evidence. In any event, sales to one or more selected purchasers may be considered to be freely offered under the provisions of section 402(f)(1)(B). *See also D. H. Baldwin Co. et al.* v. *United States*, 65 CCPA—, C.A.D. 1208 (1978).

Plaintiff must, however, establish prices which fairly reflect market value. In an effort to do so, plaintiff introduced in evidence plaintiff's exhibits 7 and 8 which represent sales to a Canadian purchaser and a Mexican purchaser. The sales, according to witness Bryan, were made by him in the United States but were shipped to the respective purchasers from Hong Kong although the Canadian sale appears to have been sent to the United States and transferred to Canada. In any event, during the time period involved herein, only a few of the nine styles before the court were sold to third countries.

Defendant contends, based upon the decision in *J. L. Wood* v. *United States*, 62 CCPA 25, C.A.D. 1139, 505 F.2d 1400 (1974), that only sales to the United States are to be considered when determining "market value," under section 402(f)(1)(B). Hence sales to Canada or Mexico involve an irrelevant market. The court in *Wood* (p. 32) made the following comment:

> Also, it was pointed out in the hearings, that the definition of "freely sold or offered for sale" in subsection 402(f)(1) would permit use of sales to exclusive agents.[10] Although the term "market value" in subdivision 402(f)(1)(B) was not defined in the Act, it obviously must relate to the relevant market. In the case of export value, this would be the export market in the exporting country to the United States and *not the foreign domestic market*, since use of the latter would result in a determination of foreign value which was deleted by the Act.[11]
>
> From the foregoing, we conclude that Congress clearly intended that export value be determined by considering only the exporting country's market for exportation to the United States [12] and that sales at wholesale to exclusive or selected agents be used in determining export value if the prices fairly reflect the market value.[13] *United States* v. *Acme Steel Co.*, 51 CCPA 81, C.A.D. 841 (1964) is hereby overruled to the extent that it

approved consideration of sales in the domestic market of the exporting country in the determination of export value. * * *·

[10] *House Hearings* 29; *1955 Senate Hearings* 18.

[11] *House Hearings* 120; *1955 Senate Hearings* 148.

[12] There was a proposal that export value be determined upon exports to all countries, not just the United States, but this was rejected. *House Hearings* 57; *1955 Senate Hearings* 62, 64–65.

[13] Subdivision 402(f)(1)(B) requires that the price to one or more selected purchasers be one which "fairly reflects the market value," not that the price reflect a *fair* market value. The prices to the selected purchasers are, therefore, to be measured against the market value and not some other standard such as costs of production.

Accordingly, I am constrained to hold, based upon the record, that export value as contended by plaintiff does not exist under the law based upon the restrictions for determining whether a "price fairly reflects the market value," in the *Wood* and *Baldwin* decisions. While the appraisement was not made in accordance with the statutory provisions, plaintiff has failed to establish a correct dutiable value. The value found by Customs must, therefore, stand.

Judgment will be entered accordingly.