Slip Op. 04-28

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| HENG NGAI JEWELRY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Consol. Court No.: 98-10-03019 |
| | : | |
| UNITED STATES, | : | **PUBLIC VERSION** |
| | : | |
| Defendant. | : | |
| | : | |

[Plaintiff's Motion for Summary Judgment is denied; and Defendant's Cross-Motion for Summary Judgment is denied.]

Decided: March 24, 2004

Law Offices of Elon A. Pollack, PC (Elon A. Pollack, Kayla Owens), for Plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, Saul Davis, Trial Attorney; Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Of Counsel, for Defendant.

## OPINION

**WALLACH, Judge:**

### I
### Preliminary Statement

On February 25, 2004, the court heard oral argument on cross-motions for summary judgment by Plaintiff, Heng Ngai Jewelry, Inc. ("HNJI"), and Defendant, United States Customs Service[1] ("Customs"). Plaintiff's Motion for Summary Adjudication of Issues challenges

---

[1] Effective March 1, 2003 the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L.

Customs' decision to appraise certain shipments of jewelry imported by HNJI using computed value rather that transaction value. Plaintiff claims that Customs erroneously characterized transfers from HNJI's related supplier, Heng Ngai, Ltd. ("HNHK"), as commission transfers rather than bonafide sales. Defendant argues that the relationship between the parties affected the terms of the transfer, and thus, the transaction value was artificially low. Defendant also claims that Plaintiff failed to use reasonable care in providing Customs with the information it required to properly determine value properly, which necessitated the use of computed value. On these bases, the government cross-moves for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994). For the following reasons, the Court denies both motions.

## II
## Background

HNHK is a Hong Kong based company that manufactures gold jewelry. HNHK imported jewelry into the United States through its salesman, Chi Man Tang, in 1993. In a 1993 interview with a Customs import specialist, Mr. Tang stated that the jewelry was being imported for possible sale at trade shows. Later that year HNJI, a United States subsidiary of HNHK, was incorporated. Plaintiff's Response To Defendant's Separate Statement Of Material Facts To Which There Are No Genuine Issues To Be Tried ("Plaintiff's Response") at 7, Par. 19. HNJI soon began importing jewelry, including 10kt and 14kt gold rings and bracelets, from HNHK.

At issue are eight entries made through the Port of San Francisco, California, and thirty-five entries made through the Port of Anchorage, Alaska, from January 1995 until December

107-296, § 1502, 116 Stat. 2135, 2308-09 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

1996.[2]  Each port requested specific financial information from the Plaintiff and the Plaintiff responded.  Customs ultimately rejected the invoice price, and appraised the jewelry using computed value, claiming that the transfers from HNHK to HNJI did not constitute bona fide sales.  Customs determined that the transactions were on consignment, referred to as a memo transfers in the jewelry industry.[3]

Customs at the Port of San Francisco issued its first request for additional information, Customs form CF 28, on August 29, 1995.  Customs sought a value breakdown of any four items on the invoices showing all costs which made up the invoice price for a particular entry by HNJI.  See Defendant's Opposition To Plaintiff's Motion For Partial Summary Judgment And Cross-Motion For Partial Summary Judgment ("Defendant's Motion"), Appendix M, Jeffries Exhibit.  HNJI responded to this request.  Customs sought more complete information and on November 28, 1995, issued a second request.  In this request, Customs stated that HNJI had provided information that showed costs only for material and labor and did not provide overhead and general expenses amounts.  Thus, Customs requested more specific costs for this entry, and for

[2] Port of San Francisco entries: 1107697-1, 1107687-2, 1107820-9, 1107907-4, 1107438-0, 1108116-1, 1107525-4, 1107487-7; Port of Anchorage entries:  110-9490035-1, 110-9493075-4, 110-9493083-8, 110-9493117-7, 110-9495729-4, 110-9514315-9, 110-9515278-8, 110-959661-1, 110-9468265-2, 110-9489981-9, 110-9523457-8, 110-9526891-8, 110-1755333-8, 110-1751451-2, 110-1754619-1, 110-176855-7, 110-17668161-8, 110-1770260-4, 110-1772066-3, 110-1771933-5, 110-1772093-7, 110-1772860-9, 110-1775885-3, 110-1745487-5, 110-149206-5, 110-1755251-2, 110-1755665-3, 110-1761725-7, 110-1757414-4, 110-1757528-1, 110-1757411-0, 110-1759996-8, 110-1764895-5, 110-1789522-6, 110-1760073-3; Plaintiff's Opposition To Defendant's Cross-Motion For Partial Summary Judgment And Reply On Its Own Motion For Partial Summary Judgment ("Plaintiff's Opposition and Reply") .

[3] In the jewelry industry there is a distinction between what the trade refers to as an "asset" transfer and a "memo" transfer.  An "asset" transfer represents a sale where ownership is transferred to the recipient.  A "memo" transfer is one in which ownership is retained by the grantor, and payment is not required by the recipient unless and until the goods are sold to a third party.  See, Plaintiff's Response, Par.24 citing the Connolly Deposition.

financial statements for Heng Ngai in Hong Kong for the last three complete fiscal years to support its [percentage] profit margin claim. In the written request, Customs stated that if the specific financial statements were not available, HNJI was requested to submit year-end adjusted income statements for the last three years. Id. at 3. The Plaintiff responded to this request.

On January 29, 1996, Customs at the Port of Anchorage also issued a CF 28 request for additional information covering entries made there. Plaintiff responded by providing the same information it had submitted to Customs at the Port of San Francisco. On March 23, 1996, Customs at the Port of Anchorage issued a second request for additional information similar to its second request at San Francisco. Plaintiff did not respond to this request.

When Customs ruled on the matters, it rejected transaction value on all of Plaintiff's entries in favor of computed value, added an additional [percent] to the invoice value, and liquidated accordingly. Customs Headquarters Ruling Letter No. 546673 (March 17, 1998), ("HQ546673"); See Plaintiff's Motion For Summary Adjudication of Issues, Appendix. Plaintiff timely protested Customs' decision. On April 10, 1997, while Plaintiff's protests were pending, Plaintiff submitted additional information in the form of invoices to unrelated purchasers. Plaintiff claimed that the invoices established that unrelated U.S. buyers paid similar prices for jewelry from HNHK. This submission did not include the corresponding entry numbers for the merchandise. Customs then requested the entry numbers as well as more detailed descriptions of the merchandise. Plaintiff provided additional information in the form of airway bills for the above invoices, but stated that it was unable to produce the corresponding entry numbers because it was not the importer for these entries.

On March 17, 1998, Customs issued a Headquarters Ruling, HQ546673, which denied Plaintiff's further protest of the Port of San Francisco's use of computed value. On December 14,

4

1998, and January 18, 1999, the Port of Anchorage denied protests on 35 entries made there based on the reasoning in HQ546673.

Some of the imported jewelry which is the subject of this case was subsequently returned and exported back to China. From September 1, 1995, through June 2, 1998, HNJI claimed drawback[4] refunds pursuant to 19 U.S.C. § 1313(j)(1) (1994) for duties paid on jewelry that was shipped back out of the United States and returned to HNHK. The returned jewelry was valued at approximately [a certain amount on money]. These drawback entries included refunds of the invoice prices, but failed to include the additional [percent] over unit price for profit.

### III
### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56; Celotex Corp. v. Cartlett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265, 273 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988). The non-moving party is "entitled to have both the evidence viewed in the light most favorable to it and all doubts resolved in its favor." Guess? Inc. v. United States, 944 F.2d 855, 858 (Fed. Cir. 1991). To oppose a summary judgment motion successfully a party must raise a genuine issue of material fact. This entails more than a mere

---

[4] Pursuant to 19 C.F.R. § 191.2 (1994), "'Drawback' means a refund or remission, in whole or in part, of a customs duty, internal revenue tax, or fee lawfully assessed or collected because of a particular use made of the merchandise on which the duty, tax, or fee was assessed or collected."

denial or conclusory statements. A party must produce evidence which sets forth specific facts showing that there is a genuine issue for trial. See American Motorist Insurance Company v. United States, 5 CIT 33 (1983).

## VI
## Arguments

Plaintiff contends that there is no genuine issue of fact with regard to Customs use of computed value because it believed the merchandise was not *sold* for exportation to the United States. Furthermore, Plaintiff claims there is no genuine issue of material fact that HNHK did in fact sell the jewelry to the Plaintiff, and Plaintiff's relationship with HNHK did not affect the price paid as reflected in the invoice price. Plaintiff asserts that it used reasonable care in responding to Customs requests for information and that Customs ignored the information available to it in appraising the merchandise on the basis of computed value.

Defendant cross-moves for summary judgment claiming that Customs properly fixed the final appraisement of the merchandise by using computed value based upon the limited facts provided by HNJI during the entry process and administrative review. Defendant claims that all the documentation made available to date only confirms and reinforces Customs' finding. Defendant further argues that given its failure to exercise reasonable care in responding to Customs' requests for information and documentation, Plaintiff should be estopped from presenting to this court any such information which was available but not previously provided to Customs.

# V

## Discussion

## A

## There is a Genuine Issue of Material Fact as to Whether Customs Properly Valued Plaintiff's Merchandise

The statutory language is specific with regard to related party transactions. Pursuant to 19 U.S.C. § 1500 (1999), "[t]he Customs Service shall . . . (a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power . . . ." Under 19 U.S.C. § 1401a (1999), Customs appraises imported merchandise according to a hierarchy. The first basis of appraisement is transaction value, that is, the price actually paid or payable.[5] See 19 U.S.C. § 1401a(1); 19 C.F.R. § 152.101 (1994). Related party transactions, such as the ones at issue here, are addressed in § 1401a(b)(2) and are acceptable only if the price is not affected by the relationship between the parties, or if the transaction value closely approximates that of identical merchandise sold to unrelated buyers or other relevant test values.[6] Thus, Customs may not disregard transaction

---

[5] 19 U.S.C. § 1401a provides that

Value
(a) Generally
    (1) Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:
        (A) The transaction value provided for under (b) of this section.
        (b) Transaction value of the imported merchandise
            (1) The Transaction value of the imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States

[6] Related party transactions are addressed in 19 U.S.C. § 1401a(b)(2)(B):
The transaction value between a related buyer and seller is acceptable for the purposes of this subsection if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported

7

value solely because the buyer and the seller are related. Customs is required to examine the circumstances of the sale. See 19 C.F.R. § 152.103(j)(2). If Customs rejects transaction value, the importer has the opportunity to demonstrate the circumstances of the sale to show that transaction value is appropriate.[7] If, upon such analysis, Customs still deems transaction value inappropriate, the statutory hierarchy continues, sequentially, to look at transaction value of identical merchandise, transaction value of similar merchandise, deductive value, and then computed value. 19 U.S.C. § 1401a.

Customs closely scrutinizes related party transactions when making a value analysis. This court in La Perla Fashions, Inc., v. United States, 22 CIT 393, 395 (1998), explained that

> [w]hen the related importer resells to U.S. customers, a three-tiered transaction is

---

> merchandise closely approximates-
> (i) the transaction value of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States; or
> (ii) the deductive value or computed value for identical merchandise or similar merchandise;
> but only if each value referred to in clause (i) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the some time as the imported merchandise.

[7] Under 19 C.F.R. § 152.103(l)(1), regarding related buyers and sellers and the validity of transaction, "[t]he district director shall not disregard a transaction value solely because the buyer and seller are related. There will be related person transactions in which validation of the transaction value, using the procedures contained in § 152.103(j)(2), may not be necessary." Additionally, the interpretive note to this regulation states that
> [i]f Customs does have doubts about the acceptability of the price and is unable to accept the transaction value without further inquiry, the importer will be given the opportunity to supply such further detailed information as may be necessary to enable Customs to examine the circumstances of the sale. In this contest, Customs will examine relevant aspects of the transaction, including the way in which the buyer and seller organize their commercial relations and the way in which the price in question was arrived at in order to determine whether the relationship influenced the price.

> created. The net profits made by the exporter on the subject merchandise are unaffected in a three-tiered transaction since the related importer resells to the open market, returning to the exporter any loss of revenue from the reduced-price sale to the importer. This ability and opportunity for import duty evasion motivated Congress to enact protective legislation and to direct Customs to closely scrutinize related party transfer pricing.

Id. at 701.

Importers have an interest in reducing invoice prices to lower import duties, and unlike buyers on the open market, related parties also have the ability and opportunity to do so. Id.

In this case, Customs decided that the evidence suggested the jewelry was not sold for export to the United States; therefore, it rejected transaction value. Customs stated that "[t]here was some evidence that the subject merchandise was only entered for possible sale in trade shows and would be returned to the foreign supplier if not sold." HQ 546673. After finding that no bona fide sale had occurred, Customs addressed subsequent valuations in the statutory hierarchy and claimed it was unable to find sufficient information for any value above computed value. "Customs also found insufficient information regarding the transaction value of identical or similar merchandise and no information was furnished pertaining to deductive value." Id.

In deciding these Motions, the court first considers whether there is a genuine issue of material fact as to whether the transactions constituted bona fide sales. The court then addresses the question of whether the Plaintiff exercised reasonable care in providing Customs with the information it required to accurately appraise the merchandise. The court also examines whether Customs followed the statutory requirements in calculating computed value. Finally, it considers whether the Plaintiff should be estopped from presenting evidence before the court that was available, but not presented administratively.

**B**

**Further Findings of Fact are Required to Determine if Invoice Value Represents the Price Actually Paid or Payable**

Plaintiff contends that there is no genuine issue with regard to the fact that HNHK sold the jewelry to the Plaintiff, and that the invoice price reflects the price actually paid or payable. Plaintiff claims that Customs rejected transaction value based upon the 1993 interview with Chi Man Tang. Plaintiff argues that Customs' reliance on this interview was inappropriate in valuing the imports because plaintiff was not even incorporated until several months after this interview. Plaintiff argues that it never received any of its jewelry on a consignment basis. To establish this Plaintiff offers the declaration of Christine Lam[8] and the deposition of Joanne Connolly[9]. Both state that transactions were in fact sales.

Ms. Lam states that "HNJ Limited [HNHK] sold all of the merchandise to the Plaintiff on an "F.O.B." [Free on Board] basis and, Heng Ngai Jewelry, Inc.[HNJI] paid the invoice amount in due course as reflected on each payment voucher and corresponding withdraw slip." Lam Declaration. Ms. Connolly states that even samples provided by HNHK were sold to HNJI. Plaintiff's Motion at 7, 8. Ms. Lam's declaration is accompanied by financial records including invoices, most of which include an indication of an additional [percentage (identifying party omitted)] profit above the unit price, bank withdrawal slips, and payment vouchers. Plaintiff claims that the [percent] addition for [(identifying party omitted)] profit is significant because it demonstrates that HNJI paid a price which represented a reasonable profit to HNHK as it would

---

[8] Ms. Christine Lam was the Financial Controller of the Heng Ngai Group during the relevant time of importation. The Heng Ngai Group includes both HNHK and HNJI.

[9] Ms. Joanne Connolly was the President of HNJI in the United States during the relevant time of importation.

with an unrelated party would.

Defendant claims that there is no question Customs correctly valued Plaintiff's imports, and that Plaintiff's evidence presented so far only reinforces Customs' assessment. Defendant states that Plaintiff failed to provide any basis for believing that the consigned importing from HNHK did not continue under HNJI "with a changing of the guard from Chi Man Tang to HNJI." Defendant's Motion at 42.[10] Defendant refutes Plaintiff's claim that the price was legitimate by pointing to the Connolly Deposition for the premise that the unit prices on the invoices reflected the actual cost of making the merchandise, and did not include profit to the manufacturer. Defendant's Separate Statement of Material Facts To Which There Are No Genuine Issues To Be Tried ("Defendant's Statement of Facts") at 3. Presumably in sales to unrelated buyers, profit and expenses would already be included in the invoice price. Defendant claims that the circumstances of the transfers were more indicative of commission or "Memo" transfers than outright sales, and points to the Lam Deposition in which Ms. Lam explains that HNJI paid HNHK only after sales to third party buyers.

Defendant disputes Plaintiff's claim that the business records attached to the Lam Declaration are sufficient to establish bona fide sales. Specifically, Defendant notes that the invoices contain a space called "Terms" and that space is blank on each of the invoices provided. Furthermore, although eight out of forty three invoices contained the shipping term "FOB", this was ambiguous, as it is unclear whether the terms were free on board Hong Kong, or free on board at the point of delivery. Defendant's Motion at 10. Defendant says that "FOBHK" would

---

[10] Although at oral argument Defendant's counsel conceded that it is currently unaware of any legal relationship between Mr. Tang and HNJI.

have been more appropriate if the terms had been as the plaintiff claims.

Defendant disputes Plaintiff's claim that the financial records establish a bona fide sale. Defendant provides the deposition of Steven A. Mack.[11] Mr. Mack testified that allocation of payments from HNJI to HNHK are not verifiable because it appears that HNJI either paid more or less than the invoice amounts. Id. at 43. Defendant claims that a determination of price paid or payable would require financial records not provided. Defendant further asserts that, unlike HNHK's sales to unrelated buyers[12], most payments by HNJI to HNHK for the merchandise in question occurred [a certain time period] after the merchandise was shipped. Defendant's Statement of Facts at 1. Defendant also points out that because payments were made so long after shipment of the goods, it is impossible to match individual payment amount to the invoices provided. Therefore the allocations of payments are unverifiable and "lend themselves to manipulation." Defendant's Motion at 45. Defendant also disputes Plaintiff's claimed [percent] profit. Defendant reasons that if the invoice amount represents a unit price equal to the manufacturing costs plus an additional [percent] profit, costs usually associated with a FOB/point of shipment price, such as general expenses, manufacturing overhead, freight to point of shipment, and other expenses one would expect are absent. Id.

Defendant goes on to argue that the Plaintiff's claim that the goods were "sold" is further undermined by the fact that HNJI claimed drawback for returned merchandise for upwards of [a

---

[11] Assistant Field Director for the U.S. Customs Service/ Bureau of Customs and Border Patrol and Auditor for the Regulatory Audit Division of the United States Customs Service at the time of importation.

[12] In Christine Lam's deposition she states that sales to unrelated buyers usually require payment within thirty days of the invoice date. Lam Deposition, p.80.

certain amount of money] from the time period at issue. Id. at 6. In Defendant's Supplementation of Defendant's Cross-Motion for Summary Judgment ("Defendant's Supplement"), Defendant argues that not only is such a large amount of returned merchandise suspiciously unlike what one would expect from an unrelated buyer, but that upon closer examination of the drawback documents filed with Customs the [percent] "added [(identifying party omitted)] profit" is omitted from the drawback claim. Thus, HNJI only claimed drawback on the unit price of the jewelry. Defendant's Supplement at 8. Plaintiff says this omission was not noticed until Defendant pointed it out in their filings in this litigation. Defendant claims that it is unlikely that an unrelated buyer in a bona fide sale would overlook a shortfall of approximately [a certain amount of money]. Defendant argues that the credibility of the Plaintiff's claims are further brought into question by the Lam and Varon[13] declarations stating that approximately [a certain percent] drawback is not unusual when in fact the drawback entries here represented [a certain percent] of the imported merchandise or about [a certain number of] times what unrelated purchasers return. Defendant's Response To Plaintiff's Second Separate Statement of Material Facts To Which There Are No Genuine Issues To Be Tried and Reply To Plaintiff's Opposition To Defendant's Cross-Motion For Summary Judgment ("Defendant's Response and Reply") at 7 and 15.

In reply, Plaintiff claims to have provided Defendant with ample proof of payment, cost breakdown, accounts receivable, accounts payable, financial statements and tax returns amounting to thousands of pages to support its claim that the transactions were bona fide sales. Plaintiff's Opposition and Reply at 27. Plaintiff claims that the unit price on the invoices

---

[13] Samuel Varon is a Certified Public Accountant hired by HNJI to analyze HNJI's financial records for this litigation.

provided represent more than the manufacturing costs and points to both the Lo and Lam depositions. Id. at 21. Plaintiff argues that the invoices and paperwork provided are sufficient to establish payment. Any reading of the invoices which finds them to be inconsistent with payments, says plaintiff, are either misread, the result of inadvertent omissions by plaintiff, or a misunderstanding of handwriting. Id. at 25 (citing Lam Supplemental Declaration). Furthermore, although payments covered more that one invoice, invoices which are not involved are not included. Also, any omission of the [percent] for profit only occurred on the invoices that pre-dated Customs notice of action, Customs form CF 29, of July 14, 1995, in which Plaintiff was instructed to include the [percent] for general expense and profit. Id. at 27.

Plaintiff goes on to argue that the fact that it was a new company explains much of the financial arrangements between HNJI and HNHK. Plaintiff claims that payments were not tied to resale in the United States. Plaintiff's Second Separate Statement Of Material Facts To Which There Are No Genuine Issues To Be Tried ("Plaintiff's Second Statement of Material Facts") at para. 50 (as corrected at Oral Argument). Initially there was a large inventory transferred from HNHK to HNJI, and the obligation to pay attached at the time of shipment. Plaintiff's Response at 2. HNJI had to sell inventory to U.S. customers to have the money to pay HNHK. In his deposition Mr. Varon states that such open payment terms are not unusual for related party transactions. Plaintiff's Opposition and Reply at 19.

Plaintiff disputes the significance of the amount of returned merchandise represented by the drawback entries. Plaintiff's argument is supported by the Varon deposition, which states that in his opinion the amount of drawback is neither unusual, nor indicative of memo transactions. Plaintiff argues that [a certain amount of money] represented a small percentage of the total sales

14

of HNHK to HNJI, and [a certain percentage of] returns are not unusual. Id. at 24. Citing the Lam Supplemental Declaration. As for the fact that the [percentage] for profit was absent from the drawback claims, plaintiff cites the declaration of Scott McCurdy (The Customs Broker who completed the relevant drawback entries) in which he states that he accidentally filled out the forms incorrectly. Id. Moreover, at oral argument Plaintiff argued that the oversight is not material to this case in that it only demonstrates that Plaintiff overpaid the government.

The question presented is whether there is a genuine issue as to a material fact. Whether or not the exchange between HNHK and HNJI is a bona fide sale is a material fact because, under 19 U.S.C. § 1401 the use of transaction value is only appropriate if there is a bona fide sale. Therefore, the outcome of this litigation will be determined, in part, on whether or not there was a sale. Under summary judgment standards, the matter will have to be litigated.

The question of whether there is a genuine dispute is determined by looking at the evidence and arguments presented to determine if a reasonable trier of fact could find for the non-moving party. Anderson et al. v. Liberty Lobby, Inc., et al., 477 U.S. 242, 248-249, 255, 106 S. Ct. 2505, 91 L. Ed 202 (1986). For the cross-motions before the court, this entails addressing each of the individual claims raised in the light most favorable to the party disputing that particular claim. This is not a weighing of the evidence. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.

Central to whether the transfers were bona fide sales is the significance of unit price as reflected in HNHK's invoices. Plaintiffs claim these prices reflect manufacturing costs, expenses, freight, and profit. Defendants claims they represent only manufacturing costs. The

15

evidence presented thus far falls short of resolving the issue. The cost breakdowns submitted in response to Customs request for information, and the depositions of HNJI's employees present varied and contradictory interpretations of invoice price. See Defendant's Motion, Appendix M; Deposition of Joanne Connolly at 101-103; Deposition of Eric Lo at 63-64; Deposition of Christine Lam at 67-71. Further evidence is required to resolve the significance of unit price.

Much of the evidence supporting other claims with respect to the terms of the transfers is brought into question by similar evidence from the opposing party. For example, pointing to HNJI's tax returns, Plaintiff claims the returns establish ownership of the goods, saying consigned goods would not have been included as assets, Plaintiff's Opposition and Reply at 20, while defendant claims the same tax returns establish that there was no sale, Defendant's Response and Reply at 8. Similarly, with respect to the absence of payment terms on certain invoices, the parties respective experts draw opposite conclusions. Mr. Varon states that open terms are not unusual in related party transactions, while Mr. Mack claims that even in such transactions, he has never seen an absence of payment terms, and that in his experience, even generous terms are spelled out. Id. at 15.

Viewing the facts presented in the light most favorable to the opposing party, Plaintiff's motion is denied because it has not eliminated the possibility that the goods were transferred on consignment, and Defendant's cross motion is denied because it has not eliminated the possibility that the goods were not transferred in a bona fide sale. In the absence of a determination as to whether the transfers represented a bona fide purchase, the parties contentions regarding other factors in determining the legitimacy of transaction value, i.e. the effect of the relationship of the parties on the terms of sale, as well methods of valuation in the hierarchy, cannot be resolved.

16

## C

**Further Findings of Fact Are Necessary to Determine if Customs Properly Fixed the Final Appraisement of the Merchandise by Using Computed Value Based on the Information Provided by HNJI During the Entry and Administrative Review**

The court now examines how Customs applied the statutes and regulations and whether the plaintiff should be estopped from presenting information not previously provided the court. Defendant has not establish conclusively that Plaintiff failed to exercise reasonable care in providing Customs with adequate information to properly value the merchandise. A genuine issue also remains as to the propriety of Customs' computed value calculation. Finally, the court finds estoppel, as urged by Defendant, to be inappropriate.

### i

**Further Findings of Fact are Necessary to Determine if Plaintiff Used Reasonable Care in Providing Customs with Information Necessary to Appraise the Merchandise Using Values Other Than Computed Value**

Defendant claims that under La Perla, Plaintiff's failure to provide detailed verifiable records allowed Customs to reject "any claim that the alleged prices between HNJI and HNHK were not affected by the relationship." Defendant's Motion at 18. According to the Defendant, such failure prevented Customs from substantiating transaction value or calculating computed value properly. Customs, the Defendant argues, appraised the merchandise according to the requirements of § 1500 given that "HNJI failed to provide proper records to substantiate its claimed transaction values and to permit a proper computed value calculation." Id. Pursuant to 19 U.S.C. § 1484 (1999), an importer is required, as part of the shared responsibility between Customs and the trade community,[14] to use reasonable care in providing Customs with

_____

[14] The legislative history for the North American Free Trade Agreement Implementation Act states that

information necessary for the proper assessment of duties.[15]

Defendant claims that Plaintiff did not provide the information necessary to determine whether there was in fact a sale, if the relationship between the parties affected the price, or if there were acceptable test values that closely approximated the price paid. Defendant further argues that the facts necessary to ascertain HNHK's general expenses and profit for the class or kind of merchandise were missing. Defendant says that Customs used the information it had to appraise the merchandise based on the requirements of § 1500 to estimate the value by all reasonable ways and means in its power.[16] Defendant argues that since Customs found insufficient information regarding the transaction value of identical or similar merchandise, and

---

In the view of the Committee, it is essential that this "shared responsibility" assure that, at a minimum, "reasonable care" is used in discharging those activities for which the importer has responsibility. These include, but are not limited to: furnishing of information sufficient to allow Customs to fix the final classification and appraisal of merchandise; taking measures that will lead to and assure the preparation of accurate information to permit proper valuation of merchandise.
P.L. 103-182, 107 Stat. 2057 (1993).

[15] 19 U.S.C. § 1484 provides that:
Except as provided is sections 490, 498, 552 and 336(j), one of the parties qualifying as "importer of record" under paragraph (2)(B), . . . shall, using reasonable care-
* * *
(B) complete the entry by filing with the Customs Service the declared value, classification and rate of duty applicable to the merchandise, and such other documentation or . . . such other information as is necessary to enable the Customs Service to-

(i) properly assess duties on the merchandise . . . .

[16] Pursuant to 19 U.S.C. § 1500, "[t]he Customs Service shall . . . (a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding."

18

no information was furnished pertaining to deductive value, it properly utilized computed value.

Plaintiff argues that it did respond to Customs' requests and that Customs failed to use the information available to properly appraise the imported merchandise. When responding to Customs' request, Plaintiff provided financial information in the form of invoices from HNHK to unrelated U.S. buyers. Customs then asked for the corresponding entry numbers. Plaintiff provided additional information; however, it was unable to produce the corresponding entry numbers, claiming that such information was not within its control because it was not the importer. Financial information was provided for the entire HNHK group with the exception of HNJI because the Plaintiff concluded that such information from an unrelated operation would be irrelevant in calculating the general expenses, costs, overhead and profit of the *manufacturer*. Plaintiff's Opposition and Reply at 10 (emphasis added). Plaintiff also claims that there was a communications breakdown between HNJI and its import broker, the importer of record, the Fritz companies.

Plaintiff says that after an initial request for information by Customs at the Port of Anchorage was forwarded by the Fritz companies to Plaintiff, Plaintiff informed Customs that it was to communicate directly with Plaintiff because the Fritz companies were not agents of the Plaintiff, but rather nominal consignees. Plaintiff further claims that Customs disregarded this request. This, Plaintiff claims, lead to a breakdown in communication, which is why Plaintiff did not respond to this second request for information. Id. at 11. Plaintiff goes on to argue that Customs never made a serious attempt to gather information necessary to appraise the merchandise properly and that it in turn relied on information from its 1993 interview with Chi Man Tang. Id. Plaintiff asserts that Customs never asked whether the goods were sold or

consigned, nor did it ask for proof of payment for any of the entries. Plaintiff's Statement of Material Facts at 2, par. 10 (citing the Jefferies, Johnstone, and Riter depositions). Plaintiff argues that Customs had predetermined that it would reject transaction value and only asked for supporting documentation after it had decided to use computed value. Plaintiff's Opposition and Reply at 14.

Simply put, the parties have raised genuine issues of material fact as to whether Plaintiff used reasonable care in providing Customs with the information necessary to properly value its merchandise. Considering the Defendant's claim in the light most favorable to the Plaintiff, given that Plaintiff did respond to Defendant's requests and provided what it considered to be adequate information, the possibility that Plaintiff used reasonable care in executing its shared responsibility cannot be eliminated. Thus, Defendant did not meet its burden of establishing entitlement to summary judgment on the issue of reasonable care.

**ii**

**Further Evidence is Required to Determine Whether the Defendant Properly Followed the Statutory Requirements in Calculating Computed Value**

Assuming, arguendo, that Customs did correctly reject transaction value in favor of computed value, the question as to whether Customs followed the statutory requirements in calculating computed value remains. Customs is required to consider the elements set out in 19 C.F.R. § 152.106 when calculating computed value. The regulation provides that:

The Computed value of imported merchandise is the sum of:
(1) The cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;

(2) An amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;

20

(3) Any assist, if its value is not included under paragraph (a)(1) or (2) of this section; and

(4) The packing costs.

In calculating computed value, Customs divided the manufacturer's total general expenses and gross profit by its sales for the latest year provided to establish its profit margin. See HQ 546673. Customs added an additional [percent] to the invoice value and liquidated accordingly. It claims that this was the only option given the limited information available. Plaintiff claims that this calculation is erroneous because the profit margin for the entire Heng Ngai Group includes a wide variety of entirely unrelated businesses such as real estate. As Defendant acknowledges, while Customs may rely upon "all reasonable ways and means" and the "best evidence available" to ascertain value, it may not disregard the necessary statutory elements in doing so. Jack Bryan, Inc. v. United States, 80 Cust. Ct. 169 173 (1978); Brown, Alcantar & Brown Inc. v. United States, 69 Cust. Ct. 249 (1972).

Defendant says that it did not disregard the statutory elements of computed value. Defendant claims to have estimated value based on the information HNJI had provided. Defendant further argues that because the "language and legislative history of § 1484 were not enacted until well after decisions such as Jack Bryan," these decisions do not reflect Congress's intent with regard to the "shared responsibility" between importers and Customs. Defendant's Motion at 19.

Plaintiff raises the possibility that Customs' calculation of computed value did not make sufficient use of the information available. While Defendant refutes this argument, its evidence falls short of eliminating it altogether. For this reason a genuine issue of material fact remains as to Customs' calculation of computed value.

21

**Defendant Failed to Adequately Support a Claim for Evidentiary Estoppel Before Trial**

Defendant argues that plaintiff should be estopped from presenting new evidence in court that was not presented to Customs in the administrative review process. The gravamen of Defendant's argument lies in drawing an analogy between Customs' estimation of duties based on limited information provided by an importer and the Internal Revenue Service's estimation of taxes for those with insufficient records of income. Defendant's Motion at 21. The appellate courts for several circuits have upheld IRS estimations where taxpayers do not have records of income.[17] As in the tax arena, importers have the privilege of self-assessing the value of their imported merchandise and the burden of maintaining records relating to claims made regarding the imported merchandise. Id. at 22 (citing 19 U.S.C. § 1484 (1999) and 9 U.S.C. § 1509 (1999)). Furthermore, just as the IRS must estimate the taxpayer's income when not provided adequate information under 26 U.S.C. § 446(b) (1999), Customs has the right to estimate the value of imported merchandise at liquidation under 19 U.S.C. § 1500.[18]

Defendant concedes that 28 U.S.C. § 2638 (1994) permits the Court to consider any new grounds raised by an importer, for the first time in Court, as long as the grounds related to the same administrative decision and merchandise encompassed by the administrative protest.

---

[17] The Bubble Room, Inc. v. United States, 159 F.3d 553, 557, 566 (Fed. Cir. 1998), reh'g and suggestion for reh'g in banc den. Jan. 14, 1999; Gerardo v. C.I.R., 552 F.2d 549 (3rd Cir. 1977); Carson v. United States, 560 F.2d 693 (5th Cir. 1977); Long v. C.I.R., 757 F.2d 957 (8th Cir. 1985); Bradford v. C.I.R., 796 F.2d 303 (9th Cir. 1986); Erickson v. C.I.R., 937 F.2d 1548 (10th Cir. 1991).

[18] Customs is directed to "fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any staement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding . . . ." 19 U.S.C. § 1500(a).

Defendant's Motion at 28. However, Defendant argues that to permit Plaintiff to offer new evidence at this juncture would be to reward Plaintiff's misconduct in failing to produce the evidence earlier. Defendant's Motion at 33. Such a holding, says defendant, would provide incentive not to comply with what defendant describes as the congressional intent of § 1484, and penalties under § 1484 are insufficient. Id. Defendant claims that without precluding the introduction of evidence previously available but not provided administratively, it will be confronted with new evidence after the ability to investigate has grown stale. Id. at 32.

Plaintiff further argues that under both statutory and case law, it should not now be estopped from presenting new evidence at trial. Plaintiff's Opposition and Reply at 12. In E.I. DuPont de Nemours & Co. v. United States, 123 F. Supp. 2d 637 (2000), the government also argued that an importer should be estopped from presenting new evidence to the court that it had not presented at the administrative level. The DuPont court rejected this argument as limiting the court's "express statutory authority to develop a record," in that it conflicts with 28 U.S.C. § 2640(a)(1) (1994) which states that its determination in reviewing the "denial of a protest pursuant to 28 U.S.C. § 1581(a) is based on the record the court makes." Id. at 640. The DuPont court also rejected a similar argument that permitting the introduction of evidence not previously provided would allow for violations of the reasonable care requirement without penalty. The court points out that "Customs has authority to initiate civil penalty proceedings against an importer for fraud, gross negligence and negligence. See 19 U.S.C. § 1592 (1999)." Id. at 641. The Defendant argues that the opportunity to obtain such relief is a lengthy alternative which should not preclude their position on estoppel.

Defendant urges the extension of the reasonable care requirement to preclude evidence

23

available to but not previously presented by Plaintiff. Given the clear statutory language and the reasoning in <u>DuPont</u>, the court declines to find that estoppel applies in this case. This ruling, however, is without prejudice to Defendant's ability to seek to exclude individual items of evidence at trial on any appropriate evidentiary basis.

## VI
## Conclusion

Summary judgment is appropriate only when there is no genuine issue of material fact. Evidence and arguments presented by the parties raise questions of material fact as to whether the transactions at issue constituted bona fide sales, Plaintiff used reasonable care in providing information to Customs for the proper appraisal of the merchandise, and Customs followed the statutory requirements in calculating computed value. Because these questions of material fact exist, summary judgment is inappropriate.

For the foregoing reasons, Plaintiff's Motion For Summary Adjudication of Issues and Defendant's Cross-Motion For Partial Summary Judgment are denied.

/s/ Evan J. Wallach

Evan J. Wallach, Judge

Dated: March 24, 2004
      New York, New York